We'll hear argument this morning in Case No. 15-827, Andrew F. v. Douglas County School District. Mr. Fisher. Mr. Chief Justice, and may it please the Court, the IDEA does not permit a school district to provide a child with a disability a barely more than de minimis educational benefit. Rather, what the Act requires is for the school to provide instruction and substantially equal educational opportunities. The school district's primary response to our argument is that the standard I just described to you does not appear anywhere in the operative text of the IDEA. So let me get right to you. Roberts. It also didn't appear anywhere in the original petition, did it? I'm looking at footnote 8 in your opening brief where you note that substantial educational benefit was the standard that was discussed in the petition, and then a significantly different one in your opening brief. Well, Mr. Chief Justice, we don't intend it to be significantly different. What we do intend, as we describe in that footnote, is to give more detail as to how the standard works. So when we ---- But the standard you're asking us to adopt, substantially equal opportunity, that does appear someplace. It appears in Justice Blackmun's concurring opinion in Rowley, and the Court itself did not adopt that formulation, did not adopt substantially equal opportunity. So you're asking us to adopt a standard that the majority already had before it and didn't adopt. Justice Ginsburg, yes, Justice Blackmun proposed a standard similar to the one that we offered the Court today, but that was 1982. And Congress has amended the IDEA twice, in 1997 and in 2004. And in the findings and purposes, it now describes the way the Act works with exactly the words I'm giving you, equal educational opportunity. That raises a concern under the Spending Clause. I mean, the Spending Clause operations are pretty clear. The Federal government proposes a deal to the States. If the States want the money, they have to agree to these provisions. And now you're saying that the content of those provisions, though, is changed by new legislation. And I just wonder whether that puts some strain on the idea that the States have agreed to these provisions when they accepted the offer under the Spending Clause. No, I don't think it does. I think it's critical to get to the text for exactly the reason you say, Mr. Chief Justice. We know from Rowley that there's a substantive guarantee in the IDEA. And we know from Rowley, even in 1982, the way the Act was put together, that that substantive guarantee must track the way that the IEP provisions, the individual educational program provisions, work. That's at page 203 and 204 of Rowley. So to get to the text and exactly what the State agrees to, you start with the FAPE definition, the definition for free appropriate public education. We all agree on that. Sub D of that definition says that the school has to provide an education, quote, in conformity with the IEP plan. Then to understand what that means, again, this is straight out of Rowley and straight out of the text, you turn to what the IEP provisions provide. And those are laid out at pages 52A and 53A of the government's appendix. And in a nutshell, what they say, over and over again, is that standards, generally speaking, for children with disabilities should be aimed at the general educational curriculum. So what you do is you start with the general educational curriculum that applies to all kids. Then you identify the child's disability and how it impacts that child's ability to participate and progress in that general educational curriculum. How does that work? I'm sorry, how does that work with students whose disabilities generally wouldn't allow them with their own potential to follow the general educational curriculum? I understand how it worked in Rowley, where you were dealing with someone with a particular disability, but one that was rather readily and easily addressed. Here you have a very different context. I mean, you would not say that the goal here was to progress consistent with the general educational curriculum? Most likely not, all the way up to grade level in this case, Mr. Chief Justice. But that question, just as you asked me earlier, is expressly answered in the statute. So on page 52A, on the bottom of 52A in sub CC, what the IEP provisions say is that for children with disabilities who take alternate assessments aligned to alternate achievement standards, a description of benchmarks or short-term objectives are appropriate. And then the rest of the IEP provisions describe how you set those goals to meet those alternate achievement standards. Now what the Congress is referring to, and let me just emphasize as I go through these statutory provisions, these are all from 2004, much post-dating Rowley. What Congress is referring to with respect to alternate achievement standards are laid out at page 79A of the government's appendix. These are the amendments to the ESEA that Congress enacted and the No Child Left Behind Act, and that have been aligned with the IDEA. So if you look at page 79A, there are four subdivisions or five, sorry, five subdivisions that describe what you do for the child, Mr. Chief Justice, that you are asking about. And perhaps the most important are sub 3 and sub 4. So if you'll permit, because the text is so important, I'll read them to you. Sub 3 says that the standards in this situation must, quote, reflect professional judgment as to the highest possible standards achievable by such students. And then what sub 4 does to complete the circle and make absolutely clear to the States and everybody else that this is required, it says those standards must, quote, be designated in the individualized education program developed under the IDEA. So the question you asked is expressly answered in the text. It is expressly answered in the IDEA. And so to bring me back to our standard, substantial educational opportunity are the words Congress used in the findings and purposes to encapsulate what is required by these IEP provisions. Kennedy, I suppose it's implicit in your standard and in some of the provisions you read that what we're talking about is the word reasonable that we see throughout the law. Do you see any function for that word? And in addition, as part of what reasonable is, is there any place to discuss the cost that the --" would be incurred for, say, severely disabled students? Fisherman. Fisherman. So let me answer both reasonableness first and cost second. So reasonableness, yes, is a central feature of the Act. And in Rowley itself, the Court said that the plan that the IEP team puts together needs to be, quote, reasonably calculated to achieve the level of educational benefit that should be guaranteed. So if you go into court, or actually here you don't start in court, you start with a hearing officer, and if there's going to be a dispute, what a parent has to show is that the plan the school adopted was one that no reasonable educator would have adopted. And so reasonableness is an important part of the way a court would look at it, a hearing officer, and, indeed, the IEP teams. Now, with specific reference to cost, let me say three things about cost, Justice Kennedy. First of all, the vast, vast majority of IEPs and programs put together under this statute don't cost much at all. They involve things like providing Braille textbooks, providing an iPad, providing some specialized instruction by a staff member who's already on staff. There are going to be some extreme cases, and the Court saw one several years ago in the Gerrard F. case, which involved a situation where a child with a ventilator needed full-time nursing services. And the Court quite clearly said that even there, where the school district was saying that was going to cost $30,000 to $40,000, the Act does not permit cost to trump what the Act otherwise requires. And the reason why, Justice Kennedy, is because Congress expressly thought about this. All the way back to the 1975 Act, what Congress said is it's, yes, it costs money, and that's why it's Spending Clause legislation, and that's why we're giving money to the States, but it is cheaper to provide services to somebody while they are being educated than it is to pay out of the public fisc for the rest of that person's life to make up for the deficit that a bad education provided. Ginsburg. Mr. Fisher, the tab here, is it $70,000 tuition? Well, Justice Ginsburg, at the time this case was litigated, it was more like $40,000 in the private school. Currently, it is closer to the number you described. But the tab to put the child in private school, remember, the school district had an opportunity to come forward with a proper IEP plan to provide Drew with a FAPE. And it simply was not. In your position, in your view, what should have been done for this student? The first and most important thing that should have been done is what's known as a behavioral assessment should have taken place to figure out why Drew's behaviors were so dramatically interfering with his education. That's something that every reasonable educator would have done. All the peer-reviewed research say it's vital. It's the very first thing that the private school did in this situation. And if you look at the plans that are laid out in the supplemental joint appendix, that was never done. And what's particularly striking, Justice Kennedy, is that even after Drew was really in an emergency situation in the spring of his fourth-grade year, put into private school, the parents came back to the school district again six months later in November and said, now that we see he's progressing, now that they've done a behavioral analysis, what will you do? Because we actually would like to have him educated in the public schools. And it's amazing that all they did was offer, and this is at pages 182 and 183, the exact same failed behavioral plan that they had been using in the fourth grade. Weren't they going to the conference that the parents didn't attend? They had scheduled a conference, and I thought a behavioral expert was part of that conference. So there were two conferences, Justice Ginsburg. There was a first one in April of Drew's fourth-grade year that the same old plan was presented with no experts. They then offered to have another conference a month later in May, and what the parents decided at that point is things had reached such a critical and emergency stage that Drew was falling so far behind, they had to put him in a private school. So they did not attend that meeting, but, Justice Ginsburg, what my friend on the other side leaves out of his brief is what I just described, which is the parents did return in the fall, once Drew had been stabilized, and did offer to meet with the school district. The school district brought no autism expert to that meeting, and the plan that they had offered back in the fourth grade. And so at that point, the parents had no choice, reasonably, but to leave Drew in private school and to seek remedies under the Act. And there are going to be, and I think this returns me to Justice Kennedy's question about cost. We recognize, and Congress recognized, and this Court recognized in Burlington that there are going to be rare, extreme circumstances where children are going to be put into a private school or otherwise need significant resources. The statistics ---- Breyer. Why didn't the statement that an IEP, what it has to do, is it has to, based on peer-reviewed research, when practicable, will be provided for the child to advance appropriately towards attaining the annual goals to make progress in the general education curriculum and so forth. So you've just described if the situation is that, wouldn't that have been violated? Or if they wrote the IEP that way, wouldn't you be able to go to court and say, look, there's their IEP, and they didn't live up to it? So you already have two arguments under the statute. And the problem that's working in my mind is if we suddenly adopt a new standard, all over the country we'll have judges and lawyers and people interpreting it differently. And so why isn't the present situation sufficient? Besides having nine people who don't know, I mean, at least speaking for myself, don't know that much about it, creating a new standard out of legal materials which are at a distance from the people, the children, and the parents who need help. Fisherman. So I think the critical reason why the Court in Rowley itself gestured towards meeting the need for a overall standard that encapsulates the Act, and the reason why we ask for it here today, is that you will find in every brief in this case, our brief, the red brief, their amicus briefs, everyone agrees that school districts, I believe, this is at page 29 and 47 of my friend's brief, they agree that the IEP provisions have to be followed. Everybody agrees that. The difficulty is, is that it just doesn't happen. And so the ---- Breyer. Well, I'm sorry if it doesn't happen. What are we supposed to do to make it happen? I mean, you have a statute that certainly seems to say that. And you have a system for enforcement. And how does us suddenly using this word equal operate? You know, the word equal has history from a lot of different areas of law. And what do you do with a wide range of disabilities, a huge range, and individual students, and do you see what I foresee? I foresee taking the money that ought to go to the children and spending it on lawsuits and lawyers and all kinds of things that are extraneous. That is what's actually bothering me. Fisherman. Right. So let me address, say, a word more about why we need a standard, and then I'll say something about the lawsuits question that you raised. So first, we need a standard because the Act, it's best to encapsulate what the IEP provisions require. If you don't like the word equal, I'm seemingly giving you the word that Congress used when it amended the Act, and that very much this Court just said that very much the same thing in Rowley when it said in the general situation, a child's plan should be tailored to allow her to advance from grade to grade. Now, if you don't want to use the word equal, here's what we would suggest, Justice Breyer. You can say, as a general rule, the IEP provisions, and therefore the FAPE requirement of the Act, demands a level of educational services to design to allow the child to progress from grade to grade in the general curriculum. And when that is not the case of a child who is a handicapped child, there's a range of people, and they can't do much for them. But they can do something for them. And if they can do something for them, do it. But if you say, measure that in terms of their ability to progress from grade to grade, maybe some will, some won't. And how does that seems to be the word appropriate, try to recognize that. And do you want to recognize that? I mean, you can't ask for more than is reasonable for them to do. So what words do we use? At bottom, we agree that there's flexibility in the Act to accommodate each child's individual potential and needs. But if I could just give a full answer to your question, we think that it would be fine if the court just said, the IEP should be tailored to achieve in the general educational curriculum at grade level for most kids. And when that is not possible, Justice Breyer, and this goes back to Mr. Chief Justice's question, you would do the alternate achievement standards according to the language I described to you at page 79A, and that is all straight out of the text of the Act. It's a more complicated way of putting it. Sotomayor, and it makes a big difference whether you take the word equal out, though. What you've just said takes the word equal out of the standard. Well, in my view, Justice Alito, I'm describing what it means to provide an equal educational opportunity. If you don't think that I'm actually going to do that. Well, I understand what an equal outcome would be. But I don't understand what an equal opportunity means when an equal outcome is not practical. What it means is that you give the so when you're dealing with a child who cannot get to grade level, I think that's what you're asking. What it means, and this is in a 2005 guidance document by the Department of Education, what it means is you're giving children with disabilities equally challenging curriculum on the academic side and in terms of their functional and general – functional and developmental goals. But for those of us But the standard – I would just say the standard is highest possible standards achievable directly in the text of the statute. But for those of us who have some feeling that the word equality is a poor fit for this statute and its focus on individuation, what would you say to those of us? How would you describe what you think is required without focusing on equality? I would say just what the Court said in Rowley for the typical child with a disability who can achieve at grade level, which is the standard that the school district has to try to meet, is progress in the general educational curriculum at grade level. Ginsburg. But we're dealing here with a child who's not going to get there. And then dealing with a child who's not going to get there, equally challenging or, Justice Kagan, I would say alternate achievement benchmarks, to use exactly the words in the standard, that are the highest possible achievable by the student. Those are the exact words at page 79A of the statute. If I could reserve the remainder of my time, please. Thank you, Counsel. Mr. Gorenstein. Mr. Chief Justice, and may it please the Court. The requirement of a free, appropriate public education is not satisfied but a program that aims at barely more than minimalist progress. What it requires instead is a program that is aimed at significant educational progress in light of the child's circumstances. What that- How does that differ? How does your formulation differ from the one we were just offered by Mr. Fisher? So I think we would take the same position with respect to Amy and similar students. It's grade level competence for students who are in the regular classroom or in the general curriculum. We're talking about somebody for whom I think you'd agree that that standard doesn't apply. Right. And so that is where we have a slight area of disagreement. We would say significant progress towards grade level standards, not as close as possible to grade level standards. How about meaningful instead of significant? So we are not committed to any one particular terminology. We think that significant is synonymous with meaningful. It's synonymous with progress that's reasonably can be expected. Meaningful was a word used in Raleigh. Yes, it was used in Raleigh. And the only reason I would, of all the terms, and I would give you one more, which is appropriate in light of the child's circumstances, progress that's appropriate. The only one I would urge you away from actually is meaningful. And the reason is that it has baggage in various courts of appeals. It means different things to different courts. And it has been applied in different ways by different courts. So I would urge you to pick, although we think that captures what we're saying. But we should come up with our own that can then be applied in different ways in different courts. Well, I think the most important thing for you to say is that this is not a barely more than de minimis standard. And it's not a maximization standard. What it is, is, and I would leave it to you to choose any of those adjectives that- The problem is, you say leave it to us. You represent the Department of Education here. They at least have experience with it. And we have far less. And so obviously I am relying and must rely upon people who have connection with expertise. And I don't want to do something that uses words that has effects that I have no idea. So I go back to look to two words. The IEP is filled with the word progress. There are several. So the word progress seems like something that should be there. Yes. And then the other word that goes, you see a lot, is appropriate. Now, you've taken that word appropriate and spelled it out in light of the student's particular needs and abilities. I think that's what you're doing with appropriate. Yes. And if we stick appropriate in that sentence somewhere, so it's significant and appropriate, does that matter? That happened. We are happy with that. One of the formulations we were happy about- You look into this and you don't see anything wrong with sticking in the word appropriate. We do not. Okay. Now, the other thing I looked at in yours is you say the school district requires school districts to provide. When I see requires school districts to provide, I begin to think everybody's going to start suing about whether they did provide. No, no. So I'm thinking, well, maybe it should be something like they're reasonably calculated to provide. That's absolutely, we agree with that. That is what Raleigh said, and that is what the standard, that's what it means to require. It's a program that is reasonably calculated to make significant educational progress in light of the child's circumstances. For all of us who might be a little slow. Now tell me what the new standard you're proposing is. And I don't mean to be buying into your adversary's position. I do think the act provides enough to set a clear standard. But the words are what we're trying to come to that would be less confusing to everyone. So one formulation that I think that would be consistent with what we are saying is reasonably calculated to make progress that is appropriate in light of the child's circumstances. So how does that actually work in practice? I mean, I understand the Raleigh standard. You're dealing with someone who has a disability that is readily addressed so that they can keep track with grade progress. But if you're out of that realm, where that is not a realistic goal in light of the child's potential, how do you decide what it is? You're sitting down at the meeting, and how do you decide? All right, so the IP provisions tell you where to start. You look at where the child currently is in terms of academic performance. What are their present levels of achievement? Then you examine the disability and you ask to what extent has this impeding progress in the general curriculum. And then what you do is you basically make an estimate. Is there somebody at that meeting? I mean, you have parents, you have the school. You have educational experts who will say, make an estimate of how much progress towards grade level standards that child can make in light of where they are now and the nature of the disability. Grade level standards. I would think in many situations, those would largely be irrelevant. So here's what we mean by that, Mr. Chief Justice. You start with the grade level standards, but then you see the building blocks that are missing underneath those grade level standards, and you set those out. So if you can't multiply and you can't add, and multiplication is the standard, maybe you need to learn how to add first. So you set forth what are the building blocks that the child is missing. Everybody, I say everybody, I assume everybody needs to learn how to add before they learn how to multiply. And the basis of my concern is that it seems to me that even though you have a lot of, maybe because you have a lot of different adjectives to describe the standard, that there's really nothing concrete there. And when you're asking the courts to undertake judicial review, it's not clear to me exactly what they're supposed to do. So again, it's appropriate in light of the circumstances, and we think that this is just what most school boards are already doing. And I agree that the concern is with court enforcement of the standard and the risk of court over-involvement in educational decisions. But the response to that is not to adopt a barely more than de minimis standard that nobody purports to apply. But it's to say that the court's role is limited to ensuring that the state's program for progress or appropriate progress is based on reasonable educational judgment. Do you agree with Mr. Fisher that cost has no place in this calculation? No matter how expensive it would be and no matter what the impact in let's say a poor school district would be on the general student population, costs can't be considered. And do you think in the real world, school boards are disregarding costs entirely? So they're definitely not disregarding costs entirely because there could be two different programs, both of which are reasonable. And they would take into account costs surely in deciding which of those reasonable programs to adopt. But more generally, I would say the answer is no in the usual case. And from Cedar Rapids, that's what the court said is, you can consider cost in deciding what the standard should be in the first place. But cost can't define what the standards are. And that makes sense to me in light of the way you look at this statute. Congress obviously knew when it passed this law that there were going to be some significant expenses associated with some kids. And that's why it gave money and made it an opt-in program. So at the very least, it seems to me, Cedar Rapids and the structure of the statute tell you that in the usual case, it can't be cost. But we wouldn't ---- Alito, do you know what percentage of the funds that are spent by school districts for this program are paid by the Federal government? I think it's a relatively ---- I think it's like 15 percent or something like that. The Federal government pays 15 percent? I think it's something like that. I could be ---- I could be corrected and maybe my ---- but the point of it is, they realized that they were going to give money, and they made it an open-ended choice for the school district. So if the school ---- But do you think that cost should be measured against the possible results to be achieved? So not in the usual case. I think Congress took cost off the table in the usual case. I think in the extreme case, you would do exactly what you're talking about. You would say for very little gain, for extreme cost, no. Not appropriate? Is that ---- Not appropriate, yes. So ---- It's not the case in this case. No. No. The school district in this case hasn't raised a cost offense. And so ---- And more importantly, the cost gave significant progress. The cost did give ---- I'm sorry, that ---- The cost of the private education resulted in ---- It did result in significant progress. Now, I'm not sure you would ---- the benchmark is what is to be achieved in a private school. I think as long as the school district's plan makes significant progress or appropriate progress towards grade level in light of the child's circumstances, that's all we have to do. Well, here, even by the Tenth Circuit admission, this was barely to minimum progress. So I think what the court of appeals said is the only thing it said is there was a free appropriate of public education because Drew had made minimum progress on some of his goals in the prior years. And that's clearly not enough to meet the standard that we're talking about. If the court has no further questions. Thank you, counsel. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. To prevail, my friends have to overcome three different things. First, they must overcome the spending clause, which requires that any standard be imposed unambiguously. Second, they must overcome Rowley, which found far from a clear statement that the statute was noticeably absent on a substantive standard for the level of education, including any standard based on equality. And third, they must overcome the fact that with each amendment to the IDEA, Congress has reaffirmed its faith in the procedural protections and systemic requirements without touching the statute's substantive standard. They have to run the ---- Ginsburg. With what we were told by Mr. Fischer, I think he was referring to 79A of the government's appendix. So he has two different arguments, Justice Ginsburg, about the changes to the amendments. We think neither of them is going to come close. First of all, nothing is unambiguous as the spending clause requires. These are changes to the procedural protections in 1414d and in an additional goal found in 1400. None of that comes close to this. And I think the best barometer of this is that it's taken until Mr. Fischer's creativity for any court really to even entertain the notion that the 97 or 2004 amendments change the standard. He has not a single case to cite that supports this idea. Kennedy, we agree that the procedural standards certainly are the measure by which a court can determine whether or not the procedures were adequate. Absolutely, Justice Kennedy. We agree. Then why doesn't that automatically make these part of the standards? We do think it makes them part of the standards. It just makes them part of the procedural standards. That is to say we agree with them that in 1997 and 2004, Congress really changed the IDEA in a significant way. You agree that the procedures have to meet these standards. Absolutely. Absolutely. And so to the extent the procedures aren't met, to the extent that this — Then I don't understand your disagreement with Mr. Fischer. Oh, it's very large. That is, we think that these are procedural checklist, and it's a detailed and exhaustive one to be sure, Justice Kennedy, after — But are not the procedures subject to judicial review to see that the procedures were followed? Absolutely, Justice Kennedy. We agree with that. That's actually the way — that's what Congress had in mind, the idea that you've got to go through the checklist. You can look at the checklist here. It's very detailed and extensive. The Supplemental Appendix, pages 131 to 142. And so long as the Court has considered those things — excuse me, so long as the IEP process has considered those things — But the procedures, as I'm sure you'll agree, is geared towards something. It's geared towards the provision of a free, appropriate public education. And then the Act, what it does is it sets up — this is why I guess I can't readily agree with your understanding of it's all procedures, and we just have to make sure that the procedures are followed, because what the Act does is it sets up an administrative process, and it says when you have disagreements about the provision of a — of a FAPE, you go to this administrative process, and what does the hearing officer do? I'm going to just read you, subject to another exception. A decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free, appropriate public education. So that's what the dispute is ultimately going to be about. It might be about some procedures along the way, and maybe it will be solved just by saying follow the right procedures. But often not. Often what the hearing officer is told to do, shall do, is to decide on substantive grounds whether a child has received a free, appropriate public education. Justice Kagan, we don't disagree with a lot of what you said. That is to say that we do think — and Rowley is very clear on this — that there is a substantive standard in the IDEA. It's just a some-benefit standard, not — and there's nine different standards now that we've heard just in the last half hour, which I'll walk you through in a minute, but that the Petitioner and the government are saying. So it's some benefit. We do think there's substantive review. That's what that provision is about. And by the way, that provision also says there can be procedural review on a harmless error. Kagan. But your substantive standard is so low, is so easy to meet, and then you justify that, and you say don't worry about it because it's all in the process. But this provision, the idea of what a hearing officer is supposed to do, and then what a court is supposed to do, says it's not all in the process. There's a question of whether a student is receiving a — a FAPE. So we disagree in two different respects. Number one, the experience for 34 years since Rowley, almost every circuit, both the government and Petitioner agree, whether it's eight or ten circuits, have been applying the — the some-benefit standard, and that it's had bite. Indeed, their own reply brief at page 19 admits and says, look, actually, schools are doing fine. So to the extent that you're concerned about some really low standard in the courts, that's actually not what's materializing. And you look at case after case on this, the ASA brief at page 24, so it's three cases using the some-benefit standard just from this year, Judge Colliton's opinion in CB. There's case after case saying this is not some, you know, totally minor standard. It is the standard that Rowley said. Roberts It says some-benefit, but you're reading it as saying some-benefit, and the other side's reading it as saying some-benefit. And you don't — And it makes a difference. And I — one reason I think that it's problematic for you is because Rowley just doesn't say some-benefit. It tells you what it is. And it's enough benefit to keep track with grade progress. And if that's what the standard is, that's certainly more than, you know, slightly more than de minimis. And now, obviously, we — you can't take that actual substantive standard and apply it in a case such as this, but it does seem to indicate that there is a substantive standard, and it's not just some-benefit. Our position is Rowley doesn't say that it's got to be grade-level progress. Rather, it says that you've got the word appropriate. This is footnote 21, reflects — reflects, quote, it's recognition that some settings simply are not suitable environments for the participation of some handicapped children, not as a term of art which concisely expresses the standard found by the lower court's equality standard. That is to say, I think you can — there are lots of different ways of trying to understand what the statute means, but Rowley said the way for the court to understand it is spending clause legislation. That is, the State entered into a contract, and they need to know the terms of the deal. And to the extent there's any ambiguity, I think Rowley was very clear in saying it is just some-benefit. And that is a natural thing. It follows from the kind of presumption against conventional stuff. Ginsburg. You don't think some-benefit is ambiguous? Well, I think that there's a little bit of ambiguity in that, but I think it's a lot easier to administer that question, because the question, you know, Justice Ginsburg, let's just say, this is the way ordinary English works. If I have a duty to benefit you, Justice Ginsburg, if I give you no benefit, I think courts can easily review that. I've given you no benefit. I've fallen down on my duty. Now, if I've given you some benefit, I've met my duty to benefit you. But I don't think there's any other way to do it. But if something you say is more than de minimis. Exactly. But that can't be just to finish that thought. It can't be that the standard is if I benefit you significantly, that's the standard, or if I benefit you equally with your colleagues or something like that. That's all adding words to the statute that aren't there. Well, where is it adding? As I see, one way of looking at what we're doing, two things have occurred. One, Rowley itself is somewhat ambiguous. It doesn't, it deliberately doesn't say how much, and that's why you get the ambiguity. The second thing that happens is the statute is amended. So what we're doing is going back and looking at those somewhat ambiguous words in Rowley in light of a statute that was amended. Now, when you look at the statute that was amended in the IEP, you do see in at least two and three, that it is designed to be a statement that will produce, meet the child's needs to enable the child to be involved in, and make progress in the general education, and then further advance appropriately towards annual goals to make progress in the general education. So now what the SG has done is go back, take those words, make progress, and put them in a phrase, which in fact, I think with not much modification, says, look, let's read what Rowley said in light of these additional words, make progress, which are statutory words, while taking account of great differences by using words like appropriately in light of the student's particular needs and abilities. And those all come from the statute. Katyala, so Justice Breyer, three things. Number one is we don't agree that Rowley itself is ambiguous. As it's been interpreted for 34 years, indeed, they can't cite any cases showing that there's any problem. Indeed, the reply brief admits at page 19, things are working just fine. So the idea that there's like some need for this Court to get involved and clarify Rowley, I think, you know, there's no case law or anything to support that. Second, the idea that the amendments somehow change the game, I think, is not nearly enough to be the clear statement that Pennhurst requires. I mean, this isn't just elephants being hidden in mouse holes. This is elephants being hidden in Romanette mouse holes. I mean, this is, you know, listen to the things that he had to point to with subsection D-4, Romanette II, and things like that, none of which ---- Ginsburg But would you agree that at least the Court should say that the formulation more than de minimis sets the level too low? And that's the formula that was used below here. Katyala, in Justice Ginsburg, we disagree with that. We think more than de minimis, which is what almost every circuit is using right now, has worked, and it follows naturally from the some-benefit language in Rowley. Now, you might disagree ---- Ginsburg So you're equating some benefit to more than? Katyala More than de minimis. We think it means the same thing. And we think there's a long history of experience with this showing that it's working. And to return, Justice Breyer, to a point that you had made before, it's to the extent there's some concern about the standard, that's really got to be up to Congress. If this Court were to change the standard, you know, it would invite all sorts of litigation. And just look at what Mr. Fisher said. As the Chief Justice started, he ---- first his petition started with a substantial equal-opportunity standard. Then it became in his merits brief an equal-opportunity standard. Then, in the beginning of his oral argument, it was, quote, tailored to achieve at grade level what most ---- Sotomayor Mr. Katyala So let's say ---- let's say that during the school year, the school districts sends someone to work with the particular student in this case. And they send her there for two weeks. You know, she goes around. And that's it. And that's all they do. That's some benefit. Better to have the person there for two weeks than not at all. But you wouldn't say that satisfies the statute. Katyala It does not. As our brief explains, there's two different provisions in the statute, 1414B-R and C-5A, which explain that the benefit from special education must be, quote, continuous. And Cedar Rapids actually said that. So ---- Roberts Okay. So just change the hypothetical. She's there five minutes a day. Katyala And, you know, five minutes a day, I think, wouldn't meet the de minimis standard. That is ---- that is, that itself is not a significant ---- that is not a ---- Roberts Well, I guess it depends on somebody who can tell us at some point whether it's substantive de minimis review, that it ---- well, I mean, are you saying that the judicial review is supposed to be whether that's de minimis or more than de minimis, and they're supposed to say, well, a half-hour is good, that's not de minimis, but that's all you have to do? Katyala Mr. Chief Justice, I'm saying two different things. One is, yes, ultimately, if we got there, that it would flunk substantive de minimis review. But you wouldn't get there. Congress's whole judgment here was to put the emphasis on procedural protections in the act, and they bolstered them in 97 and 2004. And as long as they could shine a light by creating an IEP team process where they trusted teachers and they trusted parents who are highly incentivized to come together ---- Roberts Oh, but you're putting a lot ---- you're assuming that the procedural process will yield significant results. What if they do the whole thing? Yeah, we have a hearing, everybody comes in, we bring the expert in, and the expert  In fact, we're only going to have somebody there a half-hour. Katyala I am assuming that it is in general going to work, which is what Rowley itself said at page 206 of its opinion. That was Congress's judgment. Now, I agree. You can give me a hypothetical which says that in some case, the procedures aren't going to work and there's going to be a bad result. No system is perfect, not even a judicial system, as the error correction rules of this Court recognize. I think the question for the Court is, should you kind of rejigger the statute and impose a new standard, particularly in the context of this kind of a hearing? Kennedy You'll have to excuse me. I'm not sure I understood your answer to the Chief Justice. He had a hypothetical where you have the hearing, and the hearing makes a recommendation. Recommendation not followed. What result? Katyala If the recommend ----  And I thought I heard you say, well, the procedure will follow. That's good enough. Katyala If I might have misunderstood that, I thought it was a five-minute of services thing. If it's not followed, everyone agrees there's judicial review of that. The IEP is essentially a contract. Our brief cites the provision which says that you can come in and enforce the IEP. I don't think there's any disagreement about that. I understood the hypothetical to be about some really low level of benefit. And our point is Rowley says there is a sub-benefit standard. That has been interpreted in court after court to actually have bite. The ASA brief cites three cases just in the last year alone about that. The question is, in spending clause context, do you want to actually impose something new? I mean, Mr. Gornstein gave you three different new standards, starting with his cert petition, and then his merits brief taking a different view. Sotomayor So where do you get some benefit from? Katyala I get it from Rowley itself at page 200, which says that the ---- Sotomayor So what do you do with Meaningful? Katyala So Meaningful ---- Sotomayor That was in Rowley itself, too. Katyala But Meaningful is not actually in Rowley. The Court there just mentioned Meaningful once only to say that it can't be more than Meaningful. It didn't adopt that as a standard. There is some baggage, as Mr. Gornstein says, but the really important baggage is actually what this Court said in Cedar Rapids, which is that Meaningful access doesn't require a particular level of education. So that's what they're asking. Breyer So we have now, we have the words you've mentioned. They are in old cases. As was just pointed out, those words, some, what is it, some benefit, you could say some benefit, or you could say some benefit. All right. Now, that's an ambiguity. And as you point out, most courts have interpreted what I think is the correct thing. They've said benefit, okay? And you say there's really no problem. Okay. There's really no problem, but there still is a problem with the language in a handful of courts. And now we have an IEP statute, which again and again and again looks to progress. So why is it making something up out of whole cloth? Katyala Well, first ---- Breyer ---- which is enforceable anyway, and say, look at these two words of ambiguity, and we think we should interpret them in light of the IEP requirements, which are pretty close to what the SGs suggest. Katyala But, Justice Breyer, I don't think that there is some problem in the lower courts. They're not citing cases that show that there's some parade of horribles akin to the hypotheticals that we've heard. And Congress's judgment was that the procedural protections will do a lot at the front end to avoid that problem. There might be some situation at the back end, but that's where the systemic requirements of the IDEA, no child left behind, are so important, because what they say is that the Department of Education can cut off funds, can redirect funds, can require annual reports, all sorts of things happening. And indeed, annual reports have been required since 2004 to Congress. Congress has never changed the statute in the way they want, a substantive standard change. And, you know, and again, their own reply brief at page 19 in the SG's brief admits the standard's generally working. Teachers are teaching to the top. Alito What is frustrating about this case and about this statute is that we have a blizzard of words, and if you read them literally, it's not clear to me that they mean anything different. Now, progress benefit, I don't see how you can have a benefit unless you're making some progress. Significant, meaningful, they're synonyms. If something is significant, significant or meaningful, it's more than de minimis. And if it's more than de minimis, you could say it's significant. It's something that you note. So it's really — I mean, what everybody seems to be looking for is the word that has just the right nuance to express this thought. Katyal Well, we think that you should look to what Rowley did here, which is to say the word is some benefit. And that actually follows from the text of the statute itself. There's a long presumption, Justice Alito, against de minimis, starting with Wrigley, which this Court said applies to all statutes. So we think our standard comes from the text, but there is no canon about significance or quality or anything like that. Alito What is the difference between some benefit and significant? Katyal I think it's quite large. That is, you know, you know, I think it's straightforward. So, you know, basically, I think, you know, if the Court is to ask whether there is some benefit, as I was saying to Justice Ginsburg in my hypothetical, you know, that's a pretty easy question, is have I benefited? Has the school district benefited? But once we start getting beyond that to significant, the Court has to ask both, was there some benefit, and then was that benefit significant? And I can imagine a variety of views about what is significant. Roberts It didn't just say some benefit. It said that that benefit would normally allow the student with a disability to keep up with his peers in a different grade. Now, as soon as they say that, you appreciate that you're dealing with more than just some benefit. I mean, that's a significant benefit. Well, significant, significant, meaningful, whatever. It's more than simply de minimis. It suggests that you can't just look at something and say, aha, here, that was helpful. That was helpful. Because it's the whole package has got to be helpful enough to allow the student to keep up with his peers. Katyal Mr. Chief Justice, I don't think that's what Rowley said when it used grade to grade. I think that all the grade to grade was just to say procedurally they've got to consider that and make sure that, for example, a high school kid isn't put in first grade. But I don't think that's part of the test. And several times, Rowley rejected this idea that there's any sort of level of education test. Kagan Well, how does your position, Mr. Katyal, you have a passage in your brief on page 47, which says an IEP must have the goal of advancing a child in the general education curriculum, and to the extent possible, enable her to be educated in the school's regular classes. And to me, that sounds exactly like what the Chief Justice just said, that an IEP has to be reasonably calculated to do those things, and if it's not, then relief follows. Katyal So I think, again, it's just a procedural guarantee that they have to think about and consider grade-level progress, not any sort of substantive standard. Kagan But, then, this is not just a procedural guarantee. Yes, the IDEA has lots of procedures in it, but they're all geared towards a particular substantive result. And it's that substantive result that's the focus of the — both the administrative process and then judicial review of what comes out of the administrative process. Katyal But I don't think so, Justice Kagan. I think all that those standards say is what an IEP must address, not how an IEP must deal with them. And so if you look — I think the Second Circuit recently, in a case called El Lowe v. New York City just a couple months ago, decided — basically went through this and said the 1414 standards like that are a checklist. You've got to consider grade-level progress and things like that. Kagan But if we consider all of them and we do none of them, that's just fine? Katyal That's — well, but Congress's judgment was the process. And this is something that happens in NEPA, the Procedures Act, and all. Kennedy So your answer, Justice Kagan, is yes. If you consider everything but do nothing, that's okay. Katyal No, because there's still — if you do nothing, then you haven't provided any benefit. And so there's still some substantive bite in the standard of Rowley itself. What we're saying is in the context of spending clause legislation, you can't do more than that and require something significant. And the reason, Justice Kennedy, is once you start going into significance, as the amici briefs point out, education is the most — one of the more contested areas in our society. Parents have been known to disagree. There's more acronyms about lawsuits about this newfangled theory or that newfangled being significant, and you'd get into a huge morass. What Rowley said, citing San Antonio v. Rodriguez, is that that kind of thing in the educational context is not where Federal generalist courts should be. Now, I suppose you could say maybe that's not the right policy. Maybe, you know, this is something that should happen. Courts should get involved in this. That's really got to be a judgment for Congress to make, and it's got to be something they say clearly in the context of spending clause legislation. Rowley expressly said the Pennhurst principle applies to this provision of the statute. This is core legislation, core — a core requirement of the statute, and they are imposing any number of different standards. And so I understand that there's some policy concerns among — among the Court, even if they're not shared by the — my friends on the other side, because they disclaim them, but to the extent there are those policy concerns, it's really got to be something that Congress deals with, and we don't see — Ginsburg. Well, there's one aspect of — of your position, is you say, yes, there is a substantive standard, some benefit, and then you, in the course of your argument, said some, as interpreted by most courts, has bite, but then you say de minimis is enough, more than de minimis is enough. Right. So some with bite and more than de minimis don't sound like equivalents to me. I think they are, and I think that's what the circuit after circuit has said, which is that some educational benefit, the language of page 200, means more than de minimis. And so, you know, I think there's a whole variety of cases that have interpreted this. And Justice Ginsburg, even this Court has actually had one of them. In Florence v. Carter, that came from a circuit which had a more than merely de minimis standard. The Court there found that the IEP substantively didn't meet the protections of the some benefit or merely more than de minimis standard. Breyer. I mean, how does this actually work? I thought there is a statute, in 1414, before that, it says you have to, school district, write an IEP. Then it says what an IEP is. And one of the things it says an IEP is, it is a statement of the services, et cetera, based on peer review stuff, that will be provided for the child to advance appropriately and to make progress in the general education curriculum. Now, suppose a school district writes a statement called an IEP, but it does not show that the child is likely to advance. Can't they go to the administrative thing and then go to court and say to the judge, look, they didn't write what they were required to write? Oh, absolutely. So there's a statement. So they have to write something that will be calculated. Now, let's suppose they write it, but they don't do it. Yes. Now, doesn't there something that says you have to follow the IEP? Correct. And so again, they go to court? Correct. And again, they say they didn't follow the IEP? Correct, Justice Breyer. But what there is not is something in 1414 which says that they've got to provide a significant benefit or they have to have a meaningful benefit. So they have to provide something that makes progress in the general education curriculum and they have to follow the checklist that is the statement. And advance appropriately towards the end time. Yes. There must be a statement, yes. But I think everyone agrees you don't look at outcomes or anything like that. So it's just a procedural requirement. It's just the same as Rowley. Rowley, you know, we're not saying anything different than what Rowley said. Oh, I don't know. I would say if you take Rowley as meaning, hmm, or whatever those two words were but beneficial, what's the one before beneficial? Some benefit. Some education. Some educational benefit. If you say some, yeah, this is inconsistent with Rowley. Oh, I don't think so. I think it's got to be some educational benefit designed to get the general education curriculum. Can you tell me, Mr. Keitel, are there, in the wake of the many years this Act has been enforced and these many individual meetings, have there been documents or documented areas of consensus as to certain standards, certain methodologies, certain systems that work and certain that don't? And do the courts in reviewing these proceedings ever refer to those? So I think that's where the amici briefs are so important because they say that education isn't really one of those areas. I mean, you know, people disagree about the most simple things about educational philosophy. So we've gone nowhere. Well, I don't know that we've gone nowhere, but I think the worry is to thrust courts into the business of deciding which philosophy is appropriate. And take Firefly for instance. So you say that there is generally no consensus as to appropriate methodologies for, say, a hearing impaired student, an autistic student. No agreement on methodologies? I don't mean to say that there's no agreement. I do mean to say that the amici briefs and the case law recognizes that there is a lot of disagreement. And Rowley itself says this, picking up on San Antonio versus Rodriguez, that the Congress's judgment was not to thrust courts into these really highly, very difficult considerations. And if I could just give you one example, talking about Justice Otemayor, your invocation of Firefly. So it's absolutely right that, you know, once Drew went to Firefly, there was progress that was made. But there was also a lot that was given up. I mean, one of the core purposes of the IDEA is mainstreaming. And of course, Firefly is not a mainstream school. So yes, there were some behavioral problems that were addressed by the private placement, but- Mr. Kotyel, can I go back to Justice Ginsburg's question that I'm a bit confused of, about for the same reason? But you said something like, well, this standard is being applied with BITE. So I'm just wondering, do you favor a standard with BITE? We favor the standard that Rowley said, which lower courts have done for 34 years, which does have- Do you favor a standard with BITE? It does have some BITE. It does. We're not saying- Would that be some BITE or some BITE? It is some educational benefit. That's the language of Rowley. And if you disagree with it, Congress can change- Well, again, if somebody said to you, write a statute with — write a standard with BITE, I doubt you would come up with the words more than merely de minimis. Well, but again, I think, Justice Kagan, Congress's BITE, the substantive BITE, is only at the back end. It's a small feature in a much bigger statute. Congress's judgment was shining a light- But the back end is what this case is all about. I understand that, but- We are at the back end. But, Justice Kagan, don't take the policy concerns about the hypotheticals and other things to try and rejigger the back end. Congress's handiwork was to say it's the procedural protections, shining a light, the IEP process with highly incentivized teachers and students — teachers and parents that's generally going to yield the right result. That's what Rowley itself said at page 206. And we're going to have to use musical notation to — and not just words — to express the idea that seems to be emerging. Would you say — I'll ask the same thing, Mr. Fisher, if he has a chance to address it. If we were to look at what the lower courts have been doing — we don't see very many of these cases. The lower courts see a lot of them. If we looked at what they have been doing in general, would you say that they are doing the statute appropriately and consistent with correct interpretation? I would. Ten circuits are applying the more-than-de minimis standard. It's working. Sometimes it has some bite. But to change it, as Justice Breyer was indicating to my friend, is — with 8 million potential IEPs is to invite massive amounts of litigation. But it sounds very harsh. What's the origin of this phrase, more-than-de minimis? Who thought this up? Well, it goes back to Latin. And so, again, we — you know, it's the — I know where de minimis comes from. No, no, no. No, the — the — the presumption against trifles, you know, it's — you know, Justice Scalia invokes it in the Wrigley case. It's an old formulation, and it's — But who — who decided to apply it here in this context? Well, I think the Court in Rowley, then Justice Rehnquist's opinion, invoked that by talking about some benefit. And Wrigley says that is a presumption that applies to all statutes. And, look, you know — Who — who put the term more-than-merely-de minimis? That's the formula that we're — that you are espousing. Yes. And that is — But de minimis is not enough. You know, it's merely de minimis. So — And it's — and it's not in Rowley. So where does it — who invented it? Well, I think that it came directly from the circuits right after Rowley. But all we're saying is some benefit means the more-than-de minimis test. That's the way court after court has interpreted it. It's worked well. This Court shouldn't rejigger that. Thank you, counsel. Two minutes, Mr. Fisher. Three points, Your Honors, two about the statute and one about the practicalities. First, as to the statute, the word procedural has been used by my friend to describe the IEP provisions. But whenever pressed, even he admits that the IEP provisions are enforceable in the way Justice Breyer described, which is the plan has to meet the requirements of 1414d, and if the services on the ground don't meet the requirements of the plan, they're enforceable. That's at page 47A of his brief and throughout the other briefs. Sotomayor's question, what's the practice today? Pardon me? What's the practice today? Do most courts use the more-than-de minimis standard? Yes. That is the formula in most of the circuits. That brings me to an important question on the ground, and if I'll circle back to my other statutory point. Before you do that, just putting aside, and I don't want to take ten seconds, putting aside the words, are the outcomes appropriate, or do you think the lower courts need a kick? I think they need a kick. I think the outcomes are quite scattered. I think the only reason why you get some favorable outcomes is because even the courts themselves don't believe barely more-than-de minimis. But I think you have a disjoint, and my friend keeps pointing to the amicus briefs. I think educators are, by and large, following the plan — I'm sorry, the standard we propose and the Solicitor General imposes. The No Child Left Behind Act in 2004 was a very important revolutionary bipartisan policy change. And so educators on the ground are aiming high, as they put it. The city's brief says we're aiming to maximize the benefit for our students. And so you have a disjoint between what educators are doing and the courts. And the reason they need a kick is because the very, very, very, very, very rare case that makes it into the court system is not being properly reviewed. And that leaves the last point I want to respond to, which is the fact that Congress left this alone after Rowley. What the Court has said in Rowley and in Honig and in other cases is the IEP rules are, quote, the centerpiece of the Act, that the centerpiece for how the education delivery services are put forward. If you look at page 182 of Rowley, the IEP provisions were quite hollow. They didn't have any benchmarks at all. That has dramatically changed. They now have the general educational curriculum benchmarks Justice Breyer has been referring to and we repeatedly refer to in our brief. And I think, Mr. Chief Justice, you agree cannot be met under their standard. And then that leaves the last little piece of the puzzle here, which is this child who cannot get up to grade-level standards. We give you an answer to that question that is directly in the text of the Act, just as my friend demands. Alternative achievement benchmarks at the bottom of 52A is what is required. And that takes you to 79A, which gives you the exact statutory formula. So if you want to use that formula combined with general educational curriculum at grade level, we think that would be a proper answer to the question presented in this case. Thank you, counsel. The case is submitted.